**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY**

**UNITED STATES OF AMERICA**

**v.**                                                   **CRIMINAL NO. 5:16-00221**

**MICHAEL KOSTENKO, D.O.**

### SENTENCING MEMORANDUM OF THE UNITED STATES

Pursuant to this Court's order entered on April 27, 2017, the United States offers this Sentencing Memorandum.

### I. INTRODUCTION

The PSR accurately calculates a base offense level of 32, properly applies each of the four specific offense characteristics, and appropriately declines to apply the "safety valve" of USSG §2D1.1(b)(17). PSR ¶¶ 101-119, Addendum. Therefore, the Court should impose a sentence of 235 to 240 months in prison.

### II. BASE OFFENSE LEVEL

Defendant stipulated that the base offense level is "at least" 30.[1] Defendant admitted that West Virginia does not recognize his standard of care, which he calls "pathologic adaptation." The Board of Osteopathic Medicine agreed and revoked his medical license.

---

[1] In the Stipulation of Facts, ECF No. 103, pp. 9-11, defendant admitted prescribing oxycodone outside the bounds of professional care on December 9, 2013. That day alone produces a base offense level of 30, as the 22,255 pills prescribed on that date convert to approximately 2,765 kg of marijuana equivalency. USSG §§ 2D1.1(c); 2D1.1 comment. (n.8(D)). However, to avoid potential double counting, the base offense level should be calculated using the oxycodone prescribed to Patients 1 through 20, without reference to the prescriptions from December 9, 2013.

PSR ¶ 44. Thus, the care defendant provided Patients 1 through 20 served no legitimate medical purpose and was beyond the bounds of medical practice. Dr. Kennedy, the standard-of-care expert for the United States, reached the same conclusion. PSR ¶ 56. Converting the oxycodone defendant prescribed to Patients 1 through 20 beyond the bounds of medical practice to its marijuana equivalency results in a base offense of 32. PSR ¶¶ 61-62, 102.

### III. <u>OBSTRUCTION OF JUSTICE</u>

Defendant obstructed justice by refusing to close his pain clinic, in violation of a lawful order from OHFLAC, and transferring ownership of his home shortly after he learned of the criminal investigation. PSR ¶¶ 93-97.

In April 2016, defendant confirmed he received a target letter through his attorney, Christina Kostenko. On June 9, 2016, defendant transferred his entire interest[2] in the home, where he had maintained his medical practice, to his daughter, Christina Kostenko. PSR ¶¶ 95-97.

Defendant's transfer of ownership of his home attempted to shield it from forfeiture. Defendant's medical office was located at the home and, thus, defendant knew or should have known that it may be the subject of criminal investigation, especially once he was identified as a target.

---

[2] Defendant shared ownership with his ex-wife, who kept her share after the transfer and now owns the home jointly with Christina Kostenko. Defendant received no money in exchange for the property transfer.

Potential forfeiture was not the only cloud on defendant's ownership of his home. At the time of the transfer, the West Virginia Department of Health and Human Services (OHFLAC) had levied a $20,000 civil penalty for failure to obtain a pain clinic license, and had imposed a $1,000 per day fine for every day he operated without such a license starting on September 1, 2015. Indeed, when the Board of Osteopathic Medicine suspended defendant's medical license on March 3, 2016, the OHFLAC fine had reached $204,000, due to his failure to comply. PSR ¶ 97.

Defendant's finances raise additional questions. Based on testimony at trial, defendant's Coal Country Clinic was open 4 days a week, 36 weeks a year, and conservatively generated $576,000 per year in cash.[3] This arrangement existed from approximately 2010 forward. During the five-year period described in the Superseding Indictment, the Coal Country Clinic thus made $2,880,000 in cash.

Despite the substantial wealth his practice generated, defendant reported no income and ownership of nothing but a car in his application for court-appointed counsel. On financial statements executed in March 2017, defendant disclosed that he gave his daughter, Christina Kostenko, $250,000 within the last year.

---

[3] This number assumes two classes per day, with 20 patients per class, and each patient paying $100 cash, which is supported by the evidence.

3

Simply put, defendant's crime generated substantial cash. Yet obstructive acts permitted him to qualify for a legal team at taxpayer expense, protect his property from criminal forfeiture, frustrate a lien, and cause probation to find he could not afford a criminal fine. Therefore, a two-point enhancement for obstruction of justice properly applies. Cf. USSG §3C1.1, comment. (n.4(J)).

### IV. **VULNERABLE VICTIM**

Defendant knew or should have known some of his victims were "unusually vulnerable due to age, physical or mental condition, or...otherwise particularly susceptible" to his crime. USSG §3A1.1, comment. (n.2).

This enhancement is appropriate where victims suffered from drug addiction as well as other "mental and emotional frailties." United States v. Volkman, 797 F.3d 377, 398 (6th Cir. 2015); accord United States v. Amedeo, 370 F.3d 1305, 1317-18 (11th Cir. 2004). In this case, defendant treated at least one patient whose medical history indicated both addiction and psychiatric treatment.[4] PSR ¶ 56(3).

---

[4] This does not account for any patients who may have suffered similar problems but for whom defendant failed to obtain sufficient medical histories during their treatment. PSR ¶ 55(f). Numerous additional patients exhibited signs of addiction and others had physical ailments, such as respiratory disease, that rendered them particularly vulnerable to serious complications from defendant's criminal course of treatment. PSR ¶ 56.

## V. ADDITIONAL ENHACNEMENTS

As a doctor of osteopathy, defendant abused his position of trust with the patients he failed to treat within the accepted standard of care. USSG §3B1.3 comment. (n.4). Defendant maintained a drug-related premises, PSR ¶¶ 103-106, since he used his home to commit the crimes with which he was charged, and the crimes to which he admitted as part of his plea agreement. ECF No. 103. The United States also agrees with the Probation Officer's assessment that defendant does not qualify for a "safety valve" reduction. PSR ¶¶ 65-78. Finally, defendant's assertions, contesting the validity of the factual basis of his plea and relevant conduct, undermine his acceptance of responsibility. USSG §3E1.1 comment. (n.1(A)); ECF No. 122.

## VI. CONCLUSION

Because of the extensive and irreparable harm defendant caused to his patients and the community, the Court should impose a guideline sentence of 235 to 240 months in prison.

Respectfully submitted,

CAROL A. CASTO
United States Attorney

/s/ Eric Bacaj_____
ERIC BACAJ
Assistant United States Attorney
WV Bar No. 12702
300 Virginia Street East
Charleston, WV 25801
Telephone: (304)345-2200
Fax: (304)347-5104
Email: eric.bacaj@usdoj.gov

CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "SENTENCING MEMORANDUM OF THE UNITED STATES" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 11th day of August, 2017, to:

    E. Ward Morgan, Esquire
    3217 Cumberland Road
    Bluefield, WV 24701

    Derrick Lefler, Esquire
    P.O. Box 1250
    1607 Honaker Avenue
    Princeton, WV 24740

    /s/ Eric Bacaj
    ERIC BACAJ
    Assistant United States Attorney
    WV Bar No. 12702
    300 Virginia Street East
    Charleston, WV 25801
    Telephone: (304)345-2200
    Fax: (304)347-5104
    Email: eric.bacaj@usdoj.gov