IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

UNITED STATES OF AMERICA

v.                                              Criminal Action No.: 5:16-cr-00221-001

MICHAEL KOSTENKO,                           Defendant.

**DEFENDANT MICHAEL KOSTENKO'S SENTENCING MEMORANDUM**

Defendant Michael Kostenko, by counsel, submits this memorandum in support of his motion for a downward variance from the recommended Guideline level 38. Defendant pleaded guilty to Distribution of Oxycodone, a Schedule II Controlled Substance, Not for Legitimate Medical Purposes in the Usual Course of Professional Medical Practice and Beyond the Bounds of Medical Practice, in violation of 21 U.S.C. 841(a)(1) on April 25, 2017. The presentence report calculates a Base Offense Level is 32, with recommended enhancements of eight levels, for an Adjusted Offense Level of 40.[1] After a two-level reduction for Acceptance of Responsibility, the Presentence Report recommends a Total Offense Level recommendation of 38. With a criminal history category I, the recommended sentence range is 235 to 293 months. Due to the 20-year statutory maximum, the effective recommended sentencing range is from 235 to 240 months. However, defendant submits there are several factors which warrant a sentence below the recommended range, while satisfying the factors set forth in 18 U.S.C. 3553.

        *A.*      *Nature and Circumstances of the Offense and History*
                  *and Characteristics of the Defendant under 18 U.S.C. 3553(a)(1)*

Defendant considers himself an "osteopathic fundamentalist," an approach that the probation officer accurately described: "(A)n osteopathic general practitioner looks at

---

[1] Counsel for Defendant filed objections to the proposed enhancements by separate memoranda.

life and the life of the individual as the basis of understanding, and then applies medicine to that individual." (*See* PSR ¶33). As such, he focused his treatment on the whole person and counseled patients about diet, lifestyle, environmental influences and emotional well-being through a series of lectures. Beginning around 2000, he began incorporating principles of "pathologic adaptation," or the manifestation of disease in terms of cellular alteration. Within the same timeframe, defendant developed and instituted a program of "self-management" designed and intended to give patients a greater role and stake in their treatment. (*see* Class One handout, attached hereto as Exhibit A).

Defendant provided medical care throughout southern West Virginia for 32 years (PSR ¶152). His methods and medical philosophies were unconventional in many respects, and he has been a fervent advocate for those principles, at times to his professional detriment. After losing his privilege to bill Worker's Compensation, Medicare, Medicaid and private insurance companies in 2005, he relocated his clinic to his home in Daniels, West Virginia, and evolved into a cash-only practice focused on treating and managing chronic pain brought on by degenerative disease (PSR ¶32).

### *The Need for the Sentence Imposed under 18 U.S.C. 3553(a)(2)*

The Court must fashion a sentence that reflects the seriousness of the offense, promotes respect for the law and provides just punishment. 18 U.S.C. 3553(a)(2)(A). In the instant matter, counsel submits that a sentence well below the recommended guideline range of 20 years adequately reflects the seriousness of the offense for which he has pled guilty. Defendant lost medical license and with it his livelihood and the ability to pursue his life's work. He faces forfeiture of his home. This prosecution has brought tremendously negative public attention to defendant and his family.

While each case is certainly different with its own independent facts, it is desirable to have some level of conformity or consistency to the sentences imposed between defendant physicians engaging in similar conduct. By way of example, previously before this court was Dr. J.J. Gordinho, Case Nos.: 15-cr-00237-01 and 16-cr-00007-01. On April 27, 2016, Dr. Gordinho was sentenced to 96 months on one count of distribution, and one count of health care fraud. The court is familiar with the facts involved in Dr. Gordinho's case and while there are certainly differences, the nature of the offense conduct is largely the same. Both defendants were physicians who had the ability to lawfully prescribed controlled substances and did so outside bounds of medicine rendering their conduct unlawful.

Compared to Dr. Gordinho's sentence of 96 months, to sentence the defendant within the guideline recommended by probation to 235-293 months would be an inordinate disparity in punishment between the two physicians for similar conduct.[2]

Drug weight as the driving sentencing factor in matters such as the case at hand also deserves consideration. It is submitted that the guidelines relating to distribution of drugs were not crafted with physicians in mind. They were constructed to address conduct of those whose trade was the illegal drug business. It is acknowledged that the conduct of defendant and other similarly situated physicians is legally indistinguishable in light of United States. v. Moore, 423 U.S. 127 (1975). However, from a practical standpoint, the offending physician's pursuit is not necessarily the simple distribution of drugs. That is the case in the instant matter. Although defendant's medical philosophies

---

[2] A study by the National Attorneys General Training and Research Institute (NAGTRI) on physicians who had be prosecuted for prescribing controlled substances, found average incarceration for physicians convicted in state and federal court was 63.43 months. NAAG–NAGTRI Journal, Vol. 2, Issue 2. (May 4, 2017).

3

and methods may have been out of the mainstream, there is no question that he undertook to provide patients treatment benefits and to ameliorate their suffering

This would significantly distinguish defendant's case from the conventional "pill mill" where the goal is to get as many pills to as many people as possible. The evidence presented during trial, as limited as it might have been, clearly displayed the fact that defendant's practice was not to prescribe an exorbitant number of pills to his patients. In fact, Special Agent King acknowledged that in terms of frequency and numbers, defendant's prescribing practices were not exceptional. Patients were typically prescribed 90 to 120 15 mg oxycodone tablets for a 30-day period. This comports with a medication schedule of dosages 3 to 4 times per day. Such a schedule in terms of frequency and dose would appear to be very much in line with normal prescribing practices in most respects.

Likewise, the number of patients seen by the defendant was not extraordinary. The evidence would indicate defendant saw 30 to 40 patients per day four days a week for three weeks a month. This would correspond with a patient load of 120 to 160 per week. Such a patient load would not appear to be significantly different than that of a physician with a significantly busy practice.

What affects the relevant drug amounts most significantly is the duration of the treatment relationship many of the patients examined had with the defendant. Many of the patients whose prescription history is part of his relevant conduct were long-time patients. The inclusion of every unit of every prescription written to each patient within relevant conduct presumes there was no need for the prescription, or no benefit conferred on the patient. Such an assumption across the board is inappropriate and incorrect. While defendant's methods and practices may support the offense of conviction, it cannot be presumed that he conferred no benefit on his patients. Though this fact may not

4

remove those drug weights from consideration in calculation of defendant's offense level, it should inform the decision as to the appropriate sentence. The recommended guideline sentence, far exceeds the level of punishment necessary.

The Court's sentence must deter future criminal conduct, and protect the public from further crimes. 18 U.S.C.§§ 3553(a)(2)(B)&(C) Defendant is 60 years old. Significantly, he has no criminal history. His medical practice is at an end. A lengthy sentence can do little more than has already been done to insure that defendant will not be in a position to commit further crimes or protect the public. Without a medical license whatever danger defendant may be found to have presented is wholly abated. There is no indication that defendant is predisposed to criminal conduct or presents any risk of additional criminal conduct. A shorter sentence will adequately set an example to others who might consider following a similar course; a downward variance with supervised release will carry defendant well into advanced years under the eye of the court, but a sentence within the recommended guideline range is a virtual life sentence.

The sentence should provide defendant with much needed educational or vocational training, medical care or other treatment. 18 U.S.C. 3553(a)(2)(D). Defendant is of an age and level of education that it is not anticipated he would benefit significantly from additional education and training. However, defendant does have significant health issues which require specialized care.

### *III. Conclusion*

Based upon the foregoing, Defendant Michael Kostenko submits that a significant downward variance would fulfill the requirements of 18 U.S.C. 355.

Respectfully submitted,

5

/s/ Ward Morgan
Ward Morgan, Attorney at Law
3217 E. Cumberland Road
Bluefield, W.Va. 24701
304-323-2250
304-323-2251 (fax)
State Bar ID: 5814


/s/ Derrick W. Lefler
Derrick W. Lefler, Attorney at Law
1607 Honaker Avenue
Princeton, W.Va. 24740
(304) 425-4484
State Bar ID: 5785

## CERTIFICATE OF SERVICE

I, Ward Morgan, counsel for Defendant, do hereby certify that I have served a true copy of the foregoing **"Defendant Michael Kostenko's Sentencing Memorandum"** upon Miller Bushong, U.S. Attorney's Office, 110 Heber Street, Beckley, W.Va. 25801, via electronic mail and U.S. mail, on this the 13th day of August, 2017.

/s/ Ward Morgan
Ward Morgan, Attorney at Law
3217 Cumberland Road
Bluefield, West Virginia 24701
(304) 323-2250
(304) 323-2251 (fax)
State Bar ID: 5814

/s/ Derrick W. Lefler
Derrick W. Lefler, Attorney at Law
P.O. Box 1250
Princeton, West Virginia 24740
(304) 425-4484
(888) 540-7248
State Bar ID: 5785